UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JULES GAUTIER,
*individually and on behalf of all
others similarly situated,*

      Plaintiff,

v.                                           CIVIL ACTION NO. 5:20-cv-00165

TAMS MANAGEMENT, INC.,
PAY CAR MINING, INC.,
BLUESTONE INDUSTRIES, INC.,
BLUESTONE RESOURCES, INC., and
BLUESTONE COAL CORP.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Jules Gautier's Motion for Class Monetary Relief filed on August 29, 2022. [Docs. 136, 137]. Defendants Tams Management, Inc., Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Resources, Inc., and Bluestone Coal Corp. responded on September 2, 2022 [Doc. 138], and Mr. Gautier filed a reply in support of his motion on September 12, 2022 [Doc. 139]. The matter is ready for adjudication.

**I.**

On March 4, 2020, Mr. Gautier, individually and on behalf of all others similarly situated, commenced this action against the Defendants, alleging violations of the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 et seq. [Doc. 1].

Specifically, Mr. Gautier alleged that the Defendants had failed to provide the required notice to their fulltime employees prior to laying off more than 50 of them beginning in October 2019 at the Burke Mountain Mine Complex in McDowell County, West Virginia. *Id.*

The case ultimately proceeded to trial, where the jury answered four special interrogatories in favor of Mr. Gautier. [Doc. 129]. The jury first determined that Defendants Tams Management, Inc., Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Resources, Inc., and Bluestone Coal Corp. were a "single employer" under the WARN Act. *Id.* Next, the jury found that under the WARN Act, the Burke Mountain Mine Complex was a "single site of employment." *Id.* The jury then concluded that 50 or more of the Defendants' fulltime employees at the Burke Mountain Mine Complex were terminated and that 50 or more of the Defendants' fulltime employees had their hours reduced by more than 50% for every month in any six-month period beginning on October 14, 2019. *Id.* These answers in effect rendered the Defendants liable under the WARN Act.

Following this finding on liability, Mr. Gautier moved for class monetary relief on August 29, 2022. [Docs. 136, 137]. Pursuant to the WARN Act, he seeks back pay for the entire class of 164 aggrieved employees, plus prejudgment interest. [Doc. 137 at 2-6]. He also seeks civil penalties for the affected local government, *id.* at 6-8, and requests attorney's fees, expenses, and a class representative service fee, *id.* at 8-10. The Defendants responded on September 2, 2022, arguing first that the evidence presented at trial was insufficient to sustain the jury's verdict on liability. [Doc. 138 at 1-2]. But even assuming liability, the Defendants also point to several issues with Mr. Gautier's damage calculations, *id.* at 2-6, and dispute that prejudgment interest is appropriate under the WARN Act, *id.* at 6-7. Mr. Gautier filed a reply in support of his motion on September 12, 2022, in which he concedes that damages were partially miscalculated. [Doc. 139

at 7].

In light of Mr. Gautier's concession, the Court granted him leave to supplement his damage calculations [Doc. 149], which he did on January 20, 2023 [Doc. 150]. The Defendants responded on January 27, 2023, again raising several of the same issues. [Doc. 151].

## II.

The WARN Act, enacted in 1988, requires an employer to provide 60-days' notice before ordering a "plant closing" or "mass layoff." 29 U.S.C. § 2102(a). "An employer who fails to provide this notice is liable to each affected employee for backpay, benefits, and attorney's fees." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007) (citing 29 U.S.C. § 2104(a)). In addition, the WARN Act imposes a civil penalty on employers to be paid to the unit of local government entitled to notification under the Act. 29 U.S.C. § 2104(a)(3).

## III.

Following a careful review of the parties' briefs, the Court concludes that Mr. Gautier and the class that he represents are entitled to monetary relief. However, as outlined below, the Court directs Mr. Gautier to make several changes to his damage calculations.

*A. Preliminary Issues*

Prior to addressing the merits of Mr. Gautier's motion for class monetary relief, the Court turns to two preliminary issues raised by the Defendants.

### 1. Insufficient Evidence

First, the Defendants contend that the jury had insufficient evidence to find that 50

or more fulltime employees at the Burke Mountain Mine Complex were terminated or that 50 or more fulltime employees had their hours reduced by more than 50% for every month in any six-month period beginning on October 14, 2019. [Doc. 138 at 1-2]. Specifically, the Defendants assert that the jury only heard evidence about employees of Defendant Tams Management, Inc., which had a total of 45 employees. *Id.* at 2. Moreover, the Defendants also contend that only 41 fulltime employees experienced termination or the requisite reduction in hours. [Docs. 138 at 5, 151 at 4-6].

In addition to these evidentiary arguments, the Defendants also assert, as they did in their motion for summary judgment, that a given employment event cannot qualify as an employment loss under more than one of the three categories in 29 U.S.C. § 2101(a)(6). [Doc. 138 at 1-2]. As a result, because Mr. Gautier's purported class only contained 90 fulltime employees, the Defendants argue that, as a matter of law, the jury could not find that 50 employees were terminated *and* that 50 employees experienced a reduction in hours. *Id.* In other words, the Defendants conclude that the jury's answers to the special interrogatories are logically inconsistent. *Id.*

The Court previously addressed the third argument at summary judgment, and the Defendants have not formally renewed their motion for judgment as a matter of law after trial. Under *Federal Rule of Civil Procedure* 50(b), such a motion must be made "[n]o later than 28 days after the entry of judgment." Here, the jury returned its verdict on August 11, 2022, and, since that time, the Defendants have only raised these issues in responses to Mr. Gautier's filings, in effect insulating them from any meaningful answer. Accordingly, because the Defendants have failed to timely and formally renew their motion, the Defendants have waived their right to such relief.

## 2. Expert Methodology

The Defendants next contend that Mr. Gautier's supplemental expert report is unreliable and inaccurate.[1] [Doc. 151 at 6-7]. They note mathematical errors in the report and assert that Mr. Gautier's expert has failed to provide his reasoning or methodology. *Id.*

Under *Federal Rule of Evidence* 702, an expert may testify if the following four requirements are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, *Federal Rule of Evidence* 702 "'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229-30 (4th Cir. 2021)); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

"Reliability is a 'flexible' inquiry that focuses on 'the principles and methodology' employed by the expert." *Sardis*, 10 F.4th at 281 (quoting *Daubert*, 509 U.S. at 594-95). "Specifically, district courts must ensure that an expert's opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation.'" *Id.* (quoting *Oglesby v. Gen.*

---

[1] The Defendants raised a similar argument with respect to Mr. Gautier's original expert report. [Doc. 138 at 5-6].

*Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Similarly, district courts may exclude inaccurate expert reports, such as those that contain "a 'mind-boggling' number of errors and unexplained discrepancies." *EEOC v. Freeman*, 778 F.3d 463, 466-68 (4th Cir. 2015).

While the Defendants have raised several issues with Mr. Gautier's expert report, on balance, these issues do not render the report unreliable or inaccurate. To begin, Mr. Gautier explains that his expert calculated a "levelized average daily wage" for each worker. [Doc. 139 at 4]. The expert subsequently multiplied that average by the statutory maximum number of days in order to obtain the total amount of back pay for each worker. *Id.* Contrary to the Defendants' assertion, such a calculation does not rest on "belief or speculation." *Sardis*, 10 F.4th at 281. In using a simple mathematical formula, Mr. Gautier's expert instead employed sound "principles and methodology." *Id.*

The Defendant's identification of mathematical errors does nothing to alter this conclusion. While trial courts are permitted to exclude expert reports containing a "mind-boggling" number of errors, *Freeman*, 778 F.3d at 466-68, that is simply not the case here. The Defendants have identified two[2] calculations out of a total of 164 that contain mathematical errors. While these mistakes must be remedied, such a relatively small number of errors hardly warrants the exclusion of an entire report. Rather, the Court **ORDERS** Mr. Gautier's expert to correct the mistakes in his spreadsheet.[3]

---

[2] The calculations with respect to class members Harry Blankenship III and Albert Grimmett will be addressed below. *See infra* pp. 11-12.

[3] The Defendants' remaining reliability arguments boil down to disputes over the proper interpretation of the WARN Act. These disputes do not render Mr. Gautier's expert report unreliable. On the contrary, they represent legal issues for this Court to resolve.

*B. Back Pay*

### 1. Workdays Versus Calendar Days

The Court now turns to the merits of the motion for monetary relief. Mr. Gautier first requests class wide back pay as provided for under the WARN Act, 29 U.S.C. § 2104(a)(1)(A). [Doc. 137 at 2-4]. The dispute is whether back pay should be calculated based on the number of days an employee would have worked during the violation period or the number of calendar days in the violation period. Mr. Gautier contends that because his expert utilized a "hybrid methodology," the Court need not resolve this question. [Doc. 139 at 2-4]. The Defendants maintain, however, that back pay should be calculated based on workdays. [Docs. 138 at 4-5, 151 at 3-4].

Under the WARN Act, an employer is liable to each aggrieved employee for "back pay for each day of violation at a rate of compensation" provided in the statute. 29 U.S.C. § 2104(a)(1)(A). "Such liability shall be calculated for the period of the violation, up to a maximum of 60 days."[4] *Id.* § 2104(a)(1). As the parties acknowledge, the United States Courts of Appeal are split on whether workdays or calendar days should be used to calculate back pay damages, and our circuit has not spoken on the question. However, while a split exists, the majority of courts have held that workdays should be used in making this calculation. *See Breedlove v. Earthgrains Baking Cos.*, 140 F.3d 797, 799-801 (8th Cir. 1998); *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1183-85 (9th Cir. 1998); *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 558-61 (6th Cir. 1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 771-72 (10th Cir. 1995); *Carpenters Dist. Council*

---

[4] For employees who have worked less than 120 days for their employer, the WARN Act reduces the maximum number of days to "one-half the number of days the employee was employed by the employer." 29 U.S.C. § 2104(a)(1). The Defendants noted that Mr. Gautier's expert failed to apply this limitation in his original calculation. [Doc. 138 at 3-4]. After the Court granted Mr. Gautier leave to supplement his expert report, that error was remedied. [Doc. 150].

*of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1282-86 (5th Cir. 1994). Indeed, only one Court of Appeals has reached the opposite conclusion. *United Steelworkers of Am., AFL-CIO-CLC v. North Star Steel Co.*, 5 F.3d 39, 41-44 (3d Cir. 1993).

In accord with other district courts in our circuit, this Court concludes the majority approach is more persuasive. *See, e.g.*, *Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2021 WL 4705183, at *2-3 (W.D. Va. Oct. 8, 2021); *United Mine Workers of Am. Int'l Union v. Martinka Coal Co.*, 45 F. Supp. 2d 521, 523 (N.D. W. Va. 1999); *Washington v. Aircap Indus., Inc.*, 860 F. Supp. 307, 311-13 (D.S.C. 1994). Contrary to the United States Court of Appeals for the Third Circuit in *North Star*, the Court concludes that the statutory phrase "back pay for each day of violation" "is susceptible to more than one reasonable interpretation." *Breedlove*, 140 F.3d at 800. For example, the term "back pay" could suggest that damages would equal "wages that the employee would have received absent a violation." *Id.* Conversely, "for each day of violation" "seems to imply that an employee would receive daily wages for each day of the violation period." *Id.* Consequently, given that "the statutory phrase at issue is ambiguous, [the Court] may look beyond the language of the statute to the legislative history for guidance." *Stiltner v. Beretta USA Corp.*, 74 F.3d 1473, 1482 (4th Cir. 1996) (citing *United States v. Irvin*, 2 F.3d 72, 76 (4th Cir. 1993)).

Here, the legislative history clearly demonstrates that Congress intended the phrase "back pay for each day of violation" to refer to wages the employee would have earned absent a violation. Specifically, a Senate Report provides that

> [f]or violations of the notice provisions [of the WARN Act], damages are to be measured by the wages . . . *the employee would have received had the plant remained open or the layoff had been deferred until the conclusion of the notice period*, less any wages or fringe benefits received from the violating employer during that period. This is in effect a liquidated damages provisions [sic],

8

> designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings.

S. Rep. No. 100-62, at 24 (1987) (emphasis added). Moreover, were the Court to adopt the calendar day approach used in *North Star*, the statute would yield anomalous results, which Congress likely did not intend. For example, consider two employees, one who works eight hours each weekday and another who works ten hours every Saturday. *Dillard*, 15 F.3d at 1285-86. Under the calendar day approach, assuming a 60-day violation, the first employee would recover for 480 hours of work whereas the second employee would recover for 600 hours. *Id.* Accordingly, in view of the legislative history and in an effort to avoid unintended anomalous results, the Court adopts the workday approach.

Mr. Gautier contends, however, that his expert has "utilized a hybrid methodology that blends the 'work days' and 'calendar days' methods." [Doc. 139 at 3]. According to Mr. Gautier, this method "reconciles and ameliorates the ambiguities in the legislative text by paying a full two months of wages based on the actual experience of hours worked by each class member historically." *Id.* at 4. But a careful review of Mr. Gautier's expert report reveals that he has simply used the calendar day approach. Indeed, as Mr. Gautier explains, his expert divided historical wages of each employee by their historical hours worked, which yields an average hourly wage. *Id.* That average hourly wage was multiplied by eight to calculate an average daily wage, and then following the same approach as the calendar day method, Mr. Gautier's expert multiplied that average daily wage by 60. *Id.* The spreadsheet attached to Mr. Gautier's expert report confirms this calculation method. [Docs. 150-1, 150-2]. Accordingly, beyond his bare assertions, Mr. Gautier has utterly failed to explain how this differs from the calendar day approach. The Court therefore **ORDERS** him to recalculate back pay damages based on the number of days during the violation period that an employee would have worked absent the violation.

## 2. Payments from Other Employers

The Defendants next claim that back pay damages for certain employees should be reduced to the extent they were paid during the violation period.[5] [Docs. 138 at 5, 151 at 4]. The Defendants cite one example where they claim Mr. Gautier has failed to apply such a reduction. [Docs. 138 at 5, 151 at 4]. Mr. Gautier responds that back pay damages are only required to be reduced to the extent employees were paid by the employer that terminated them. [Doc. 139 at 5-6]. Consequently, because the payments referenced by the Defendants were not from the single employer in this case, Plaintiff asserts that no reduction is necessary. *Id.*

Pursuant to the WARN Act, back pay damages are required to be reduced by each of the following:

> (A) any wages paid by the employer to the employee for the period of the violation;
>
> (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation; and
>
> (C) any payment by the employer to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of and attributable to the employee for the period of the violation.

29 U.S.C. § 2104(a)(2). "The employer" refers to the employer "who order[ed] a plant closing or mass layoff in violation of [29 U.S.C. § 2102]." *Id.* § 2104(a)(1).

As Mr. Gautier notes, the Defendants have failed to establish that the payments during the violation period came from the single employer in this case. Specifically, the Defendants' evidence shows that one employee was paid by Ranger Fuel Coal Corporation and

---

[5] This is the claim on which the Defendants have based their argument that only 41 fulltime employees experienced termination or the requisite reduction in hours. *See supra* pp. 3-4.

Blackstone Energy Ltd. following his termination. [Docs. 133-3 at 60, 133 at 49]. But the jury found neither of these companies to be part of the single employer in this case. [Doc. 129]. Moreover, the Defendants have come forward with no evidence, and the Court is aware of none, that supports the conclusion that these other companies were part of the single employer. Accordingly, pursuant to the WARN Act and the jury verdict in this case, Mr. Gautier is only required to reduce back pay damages by payments made by the Defendants. To the extent Plaintiff has failed to do so, the Court **ORDERS** that reduction be applied.

### 3. Specific Calculations

With respect to two specific class members, Harry Blankenship III and Albert Grimmett, the parties have been unable to agree on the number hours each worked prior to their employment loss. As to Mr. Blankenship, the Defendants assert he was only employed for 352 hours. [Docs. 138 at 3-4, 151 at 3]. Mr. Gautier responds that taking into account overtime hours, Mr. Blankenship's total should be 443 hours. [Doc. 139 at 7].

While overtime pay may be included in back pay damages, employees must have regularly worked overtime hours before and after the mass layoff. *United Mine Workers of America Int'l Union*, 45 F. Supp. 2d at 527-28. In other words, back pay damages must be tied to the "regular rate received by such employee." 29 U.S.C. § 2104(a)(1)(A). Here, beyond his bare assertions, Mr. Gautier has failed to make that showing with respect to Mr. Blankenship. Accordingly, the Court **ORDERS** that back pay for Mr. Blankenship be calculated based on his regularly worked hours, which here total 352 hours.

As to Mr. Grimmett, the Defendants contend that he was employed for a total of 40 hours. [Docs. 138 at 4, 151 at 3]. Mr. Gautier, however, asserts that based on Mr. Grimmett's uncontradicted testimony at trial, he was employed by the Defendants from March 2019 to his

11

termination in October. [Doc. 139 at 6]. However, at trial, Mr. Grimmett only stated that he began "working for the Justices in March of 2019." [Doc. 155 at 116]. He did not specifically testify that he was employed by any of the Defendants at that time. As a result, because Mr. Gautier has failed to identify specific evidence from which the Court can conclude Mr. Grimmett was referencing the Defendants, the Court **ORDERS** that his back pay be calculated based on a total of 40 hours worked.

### C. Prejudgment Interest

In addition to back pay damages, Plaintiff contends that he is entitled to prejudgment interest, and, should the Court agree, he urges that West Virginia state law be used to determine the appropriate rate. [Doc. 137 at 4-6]. Defendants respond that the WARN Act does not provide for prejudgment interest. [Doc. 138 at 6-7].

Pursuant to the WARN Act, "the remedies provided for in [29 U.S.C. § 2104] shall be the exclusive remedies for any violation." 29 U.S.C. § 2104(b). However, while § 2104 does not provide for prejudgment interest, it also does not preclude it, and numerous courts have held that such an award is proper. *See, e.g.*, *Frymire*, 61 F.3d at 772-74; *Dillard*, 15 F.3d at 1288-89; *Messer*, 2021 WL 4705183, at *1; *United Mine Workers of America Int'l Union*, 45 F. Supp. 2d at 523; *Aircap Indus., Inc.*, 860 F. Supp. at 315. This is because prejudgment interest "merely compensates the plaintiff for the time-value of the damages explicitly provided under the WARN Act" and "therefore is a necessary adjunct to the damages remedy available under § 2104(a)." *In re Bluffton Casting Corp.*, 186 F.3d 857, 860-61 (7th Cir. 1999), *overruled on other grounds by In re Bentz Metal Prods. Co.*, 253 F.3d 283 (7th Cir. 2001).

As to the appropriate rate of interest, "absent a statutory mandate the award of prejudgment interest is discretionary with the trial court." *Fox v. Fox*, 167 F.3d 880, 884 (4th Cir.

1999) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc)). In exercising that discretion, courts have turned to the federal post-judgment interest statute, 28 U.S.C. § 1961, in WARN Act cases. *See, e.g.*, *Frymire*, 61 F.3d at 772-74; *Dillard*, 15 F.3d at 1288-89; *Messer*, 2021 WL 4705183, at *1; *United Mine Workers of Am. Int'l Union*, 45 F. Supp. 2d at 523. Section 1961 provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of judgment." 28 U.S.C. § 1961(a).

Accordingly, based on the weight of authority and to compensate the class for the time-value of their damages, the Court **ORDERS** prejudgment interest at the rate provided in 28 U.S.C. § 1961(a). However, to account for the fact that § 1961 addresses post-judgment interest, the Court **DIRECTS** Mr. Gautier to use the § 1961 interest rate for the calendar week preceding the date of the violation. Moreover, the Court also **DIRECTS** Mr. Gautier to calculate interest from the date of the violation to the date of submission of his revised request for damages.

### D. Civil Penalty for Local Government

Mr. Gautier next asserts that the Defendants should be required to pay the statutory civil penalty provided for in the WARN Act to the City of Keystone. [Doc. 137 at 6-8]. The Defendants do not address this request.

The WARN Act provides that employers must provide notice of a plant closing or mass layoff not only to affected employees, but also to "the chief elected official of the unit of local government within which such closing or layoff is to occur." 29 U.S.C. § 2102(a). Any employer that fails to give such notice to a local government "shall be subject to a civil penalty of not more than $500 for each day of such violation." *Id.* § 2104(a)(3). Moreover, "[a] person seeking

to enforce such liability . . . may sue either for such person or for other persons similarly situated, or both." *Id.* § 2104(a)(5).

In support of his argument that the Defendants should be required to pay a civil penalty, Mr. Gautier cites to Plaintiff's Exhibit 1, which purportedly shows that the Burke Mountain Mine Complex is contained within the City of Keystone. [Doc. 132]. However, a careful inspection of this map sheds little light on the question. Although certain job sites are labeled, the location of the City of Keystone is unclear. *Id.* Moreover, while other towns appear to be marked on the map, no such marking has been made for the City of Keystone. *Id.* As a result, the Court is unable to determine whether the Burke Mountain Mine Complex was within the City of Keystone as required by 29 U.S.C. § 2102(a). Accordingly, the Court **ORDERS** Mr. Gautier to remove the civil penalty under 29 U.S.C. § 2104(a)(3) from the damage calculations.

### *E. Attorney's Fees, Expenses, and Class Representative Fee*

Mr. Gautier finally seeks attorney's fees, expenses, and a class representative fee. [Doc. 137 at 8-10]. Asserting again that no WARN Act violation occurred, the Defendants oppose this request. [Doc. 138 at 7].

*Federal Rule of Civil Procedure* 54(d) contemplates that a motion for "attorney's fees and related non-taxable expenses" be filed after the entry of judgment. Fed. R. Civ. P. 54(d) ("[T]he motion must be filed no later than 14 days after the entry of judgment."). With respect to class actions, *Federal Rule of Civil Procedure* 23(h) provides additional requirements for such a motion, but does nothing to displace these timing requirements. Fed. R. Civ. P. 23(h) ("A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets."). Accordingly, in a class action, a motion for attorney's fees and non-taxable expenses should be filed after the entry of judgment.

With this framework in mind, the Court denied Mr. Gautier's previously filed motion for leave to file a motion for attorney's fees and expenses and a proposed class notice of judgment. [Doc. 148]. Following submission of Mr. Gautier's revised request for damages and after the entry of judgment, Mr. Gautier may move for attorney's fees, expenses, and a class representative free. Such a motion must comply with the requirements of *Federal Rule of Civil Procedure* 23(h) and 54(d). This procedure will permit the Court to accurately assess whether the requested amounts are appropriate given the total recovery.

## IV.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for class monetary relief and **DIRECTS** him to file an updated request for damages in conformance with this opinion no later than **March 10, 2023**.

The Court **DIRECTS** the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: March 2, 2023

Frank W. Volk
United States District Judge