## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

| | |
|---|---|
| **JULES GAUTIER,**<br>**Individually and on behalf of all others**<br>**similarly situated,** ) ) ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.  5:20-cv-00165** |
| ) | |
| **TAMS MANAGEMENT, INC.,** ) | |
| **PAY CAR MINING, INC.,** ) | |
| **BLUESTONE INDUSTRIES, INC.,** ) | |
| **BLUESTONE RESOURCES, INC., and** ) | |
| **BLUESTONE COAL CORP.** ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

NOW COME Defendants Tams Management, Inc., Pay Car Mining, Inc., Bluestone

Industries, Inc., Bluestone Resources, Inc., and Bluestone Coal Corp. (collectively "Defendants"),

by counsel, and move this Honorable Court for judgment as a matter of law pursuant to Rule 50

of the Federal Rules of Civil Procedure; or in the alternative, for a new trial pursuant to Rule 59

of the Federal Rules of Civil Procedure; and in support thereof, state as follows:

**I.      Judgment as a Matter of Law**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, after a party has been fully

heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find

for that party on that issue, the court may determine the issue against that party and may grant a

motion for judgment as a matter of law against that party.  Defendants moved this Court for

judgment as a matter of law at the close of all the evidence and prior to submission of the case to

the jury because there was insufficient evidence to establish liability against the Defendants in this matter. The Court denied the motion and submitted the case to the jury, which answered special interrogatories in favor of the Plaintiff. Following post-trial motions concerning monetary relief for the class, this Court entered judgment against the Defendants on March 27, 2023. Defendants now renew the motion pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[1]

In the *Memorandum Opinion and Order* dated March 2, 2023 (Doc. 157), this Court stated that the Defendants have waived the issues addressed herein because the Defendants did not formally renew their motion for judgment as a matter of law within 28 days after August 11, 2022, the date on which the jury returned its "verdict." See Doc. 157 at 4. However, the jury in this matter did not return a verdict, as the form was intentionally changed to special interrogatories to be answered by this advisory jury. Moreover, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a renewed motion for judgment as a matter of law must be filed "[n]o later than 28 days after the entry of judgment," which did not occur until March 27, 2023 (Doc. 161). See Fed. R. Civ. P. 58. Accordingly, the Defendants hereby timely renew their motion for judgment as a matter of law as allowed by the Rules of Civil Procedure; and to the extent the Court deems necessary, respectfully request that the Court amend and eliminate its prior finding of waiver pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, or grant such relief from the order pursuant to Rule 60 of the Federal Rules of Civil Procedure.

### A.    Insufficient Evidence for the Class

Plaintiff Jules Gautier alleges that he was a full-time employee of Defendants, jointly, and that he worked for the Defendants at the coal-mining and preparation site known as the Burke Mountain Mine Complex ("Burke Mountain") in McDowell County, West Virginia, at the time

---

[1] The Defendants hereby adopt and incorporate the argument made at the conclusion of the evidence, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, as set forth in the August 10, 2022 Trial Transcript at 63-76.

that he was laid off without prior written notice on or about October 24, 2019. <u>See</u> Complaint at

¶ 1. In reality, Plaintiff was employed as a coal miner solely by Defendant Tams Management,

Inc. ("Tams") at the time of the layoff in October 2019. <u>See</u> August 9, 2022 Trial Transcript at 70

(attached hereto as **Exhibit 1**).

Nevertheless, Plaintiff purports to represent a class of people who have claims against

Defendants under the Worker Adjustment Retraining Notification Act of 1988 ("WARN Act"),

which is codified at 29 U.S.C. § 2101, *et. seq*. Generally, the Act requires employers to give

workers 60 days' notice of planned plant shutdowns or significant layoffs, and creates a civil cause

of action which can be brought by "each aggrieved employee who suffers an employment loss as

a result of such closing or layoff" without receiving the required notice. <u>See</u> 29 U.S.C. §

2104(a)(1). The WARN Act applies only to employers who employ (A)100 or more employees,

excluding part-time employees; or (B)100 or more employees who in the aggregate work at least

4,000 hours per week (exclusive of hours of overtime). <u>See</u> 29 U.S.C. § 2101(a)(1). Tams did not

employ 100 workers at the time of the layoff in October 2019.

Plaintiff initiated this action under Section 2101(a)(6)(B) of the WARN Act, which applies

to layoffs. The Complaint sets forth very clearly that his alleged "employment loss" was the result

of being "separated from work, without cause, **for a period to exceed 6 months**, as a result of the

aforementioned layoff, which constituted a plant closing," <u>see</u> Complaint at ¶ 28 (emphasis added),

or that he "experienced an employment loss as a result of the aforementioned layoff, . . . **for a**

**period exceeding 6 months**, and which constituted a mass layoff." <u>Id</u>. at ¶ 29 (emphasis added).

However, Plaintiff admitted at trial that he was not laid off in excess of six months. Rather, he

was offered the opportunity to return to work in less than six months, and he declined, so he did

not suffer a "loss of employment" under the statute and therefore cannot prevail on a WARN Act claim.  See Exhibit 1 at 73-74.

Recognizing this dispositive fact, Plaintiff completely abandoned the theory of liability alleged in his Complaint by asserting in motion practice, but not in any amended pleading, that his claim actually falls within Section 2101(a)(6)(C) of the WARN Act, which applies only to reductions in **hours worked**.  Nowhere in the Complaint does Plaintiff allege that he suffered a "reduction in hours of work" as described in Section 2101(a)(6)(C).  Then, after several unsuccessful mediation sessions in which the Defendants vigorously asserted that the facts and controlling legal principles do not support either of Plaintiff's theories of liability, Plaintiff conjured the alternative theory, again in motion practice without any amended pleading, that his severance from employment was effectuated by a "plant closing" that resulted in a "termination" in violation of Section 2101(a)(6)(A).  Nowhere in the Complaint does Plaintiff allege that he suffered a "termination" as described in Section 2101(a)(6)(A).

Nevertheless, the case proceeded to trial under Plaintiff's substituted theories of liability that were never stated in any pleading, and despite Defendants' objection to the substance of the special interrogatories, the jury determined that at least 50 full-time employees were terminated from employment, AND at least 50 full-time employees had their hours reduced by more than 50%, a result that is inconsistent, illogical, and unsupported by the evidence.[2]  There is no possible way that a reasonable, unbiased jury could reach either conclusion, because the jury heard evidence only from and about employees of Tams Management, Inc., which, according to payroll records and summaries produced in this matter, had only 44 total employees during the relevant time

[2] The jury also determined that the Defendants are a "single employer" under the WARN Act, and that Burke Mountain is a "single site of employment" for purposes of the WARN Act.  See Doc. 129.  The Defendants hereby adopt and incorporate the argument on these issues made at the conclusion of the evidence, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, as set forth in the August 10, 2022 Trial Transcript at 63-76.

4

period, and only 31 were considered full-time under the WARN Act.  See Plaintiff's Trial Exhibits 14 and 15 (Docs. 132-17 and 132-18).

Furthermore, as the Defendants argued in their Motion for Summary Judgment (Doc. 88, 89, 96) and elsewhere, there are three distinct provisions of Section 2101(a)(6) that cannot be intermingled, and a particular set of facts and circumstances can only support a single violation. See Leeper v. Hamilton Cnty. Coal, LLC, 939 F.3d 866 (7th Cir. 2019); Graphic Comm. Intl. Union v. Quebecor Printing (USA) Corp., 252 F.3d 296 (4th Cir. 2001) (recognizing that "if an employee were to receive required notice of an anticipated reduction in hours under 29 U.S.C. § 2101(a)(6)(C), that employee would still be entitled to WARN Act notice if, subsequently, he were either laid off or terminated under the circumstances set forth in 29 U.S.C. § 2101(a)(6)(A) or (B)").  The simple math necessary to support the jury's determination that 50 full-time employees were terminated AND 50 full-time employees had their hours reduced would require 100 full-time employees in the purported class, because a single employee cannot be terminated and have his hours reduced during the same event.  Logically, if an employee is working any hours, then he has not been terminated, and if he has been terminated, then there are no hours to reduce.  But the purported class contains only 90 full-time employees in total.  See Plaintiff Trial Exhibits 14 and 15 (Docs. 132-17 and 132-18).  So which of the employees were terminated, and who had their hours reduced?  The jury's answers to the special interrogatories are logically inconsistent and lack sufficient evidentiary support, and therefore cannot stand as a matter of law.

"The movant is entitled to judgment as a matter of law if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof."  Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995) (internal quotations and citation omitted).  "Judgment as a matter of law is proper when, without weighing the credibility of the

evidence, there can be but one reasonable conclusion as to the proper judgment." <u>Princess Cruises, Inc. v. General Elec. Co.</u>, 143 F.3d 828, 831 (4th Cir. 1998) (internal quotations and citation omitted). A court must "consider the evidence in the light most favorable to the nonmovant to determine whether the evidence presented at trial was sufficient to allow a reasonable jury to render a verdict in the nonmovant's favor." <u>Id</u>. "Where the non-moving party has the ultimate burden of proof and fails to produce sufficient evidence to support its cause of action, then the court should render judgment in favor of the moving party as a matter of law." <u>Havird Oil Co., Inc. v. Marathon Oil Co., Inc.</u>, 149 F.3d 283, 289 (4th Cir. 1998). "[I]f the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered." <u>Myrick v. Prime Ins. Syndicate, Inc.</u>, 395 F.3d 485, 489 (4th Cir. 2005). Rule 50(b) "tests the legal sufficiency of a claim, that is, assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim." <u>Belk, Inc. v. Meyer Corp.</u>, 679 F.3d 146, 155 (4th Cir. 2012).

To succeed on this claim under the WARN Act, Plaintiff bears the burden to offer sufficient evidence to show that at least 50 full-time employees suffered an employment loss as the result of a plant closing or mass layoff. <u>See</u> 29 U.S.C. § 2101(a). The term "employment loss" means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period. <u>See</u> 29 U.S.C. § 2101(a)(6). As a matter of law, the case cannot proceed to a jury unless there is some credible evidence for a reasonable jury to conclude that an employment loss occurred. Here, the jury heard evidence only from and about employees of Tams Management, Inc., which, according to payroll records and summaries produced in this matter, had only 44 total employees during the relevant time period, and only 31

were considered full-time under the WARN Act.  Even if the jury believed that all 31 full-time Tams employees had suffered an employment loss under the WARN Act, the members of the jury received absolutely zero information to support any conclusion that any other employees of the various Defendants had been terminated or had their hours reduced.  Consequently, the jury's decision regarding the fate of any other employees "necessarily [was] based upon speculation and conjecture, [and] judgment as a matter of law must be entered."  Myrick, 395 F.3d at 489.

Furthermore, the payroll records submitted as exhibits at trial identify numerous full-time employees for purposes of the WARN Act, who clearly did not experience either a termination of employment or a reduction in hours of work, which are facts that are set forth in the documentary evidence submitted by the Defendants.  These same payroll records confirm that there are no more than forty-one (41) full-time employees who might possibly qualify for inclusion in the purported class.  See Defendants' Trial Exhibits 1-4 (Docs. 133, 133-1, 133-2, 133-3, 133-4); see also Defendants' proffered (but excluded) Exhibit 7 (Doc. 134-1).  Consequently, the class does not meet the threshold of 50 full-time affected employees, and therefore no claim exists under the WARN Act.  The evidence does not support this essential element required by the WARN Act, and therefore the Defendants are entitled to judgment as a matter of law.  See Singer, 45 F.3d at 827.

This Court previously recognized that "Defendants' evidence shows that one employee was paid by Ranger Fuel Corporation and Blackstone Energy Ltd. following his termination," but "Defendants have come forward with no evidence . . . that supports the conclusion that these other companies were part of the single employer."  *Memorandum Opinion and Order* (Doc. 157) at 10-11.  To the contrary, the trial testimony of Pat Graham (presented by prior deposition) confirms that Ranger Fuel is a part of the Burke Mountain Coal Mining Complex, see August 10, 2022 Trial

7

Transcript at 13-14 (attached hereto as **Exhibit 2**), and the payroll records admitted as Defendants' exhibits confirm payroll transition to Blackstone and continuing employment for at least 24 full-time employees.  See Defendants' Trial Exhibit 1 (Doc. 133).  Plaintiff cannot have it both ways, and he is not entitled to pick and choose the areas of Burke Mountain to include for his own convenience.  Federal courts have recognized that the purpose of the WARN Act is "to ensure adequate opportunities . . . for retraining and/or reemployment" and to give "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."  Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (internal quotations and citations omitted).  Like many of the plaintiffs in Rifkin, "[e]mployees in the situation at hand who were in fact rehired do not fall within the purpose of the WARN Act because there is no need for retraining or alternative jobs. Accordingly, the number of employees rehired within six months do not count towards the requisite [50] employees who suffered an employment loss."  Id.

### B.    Insufficient Evidence for the Class Representative

Plaintiff Gautier did not suffer an employment loss, he has no real interest remaining in this litigation and cannot benefit therefrom, and this case should be dismissed in its entirety. Plaintiff completely abandoned his layoff theory at trial, and despite his counsels' vigorous and successful efforts to include the reduction in hours theory for the jury's consideration, the record is void of any evidence that would satisfy Plaintiff's burden of proof on that issue.

Plaintiff Gautier testified that he never worked another hour at Burke Mountain after his layoff, because he refused recall.  See Exhibit 1 at 73.  Logically, any layoff necessarily involves a reduction in work hours to zero; but the WARN Act drafters obviously recognized the need to

differentiate these two distinct situations, by enacting two separate provisions. If subsection C had been meant to apply to both layoffs and reductions in hours, as Plaintiff suggests, then what is the utility of subsection B?

The rule against superfluities has long instructed courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous. See Hibbs v. Winn, 542 U.S. 88, 101 (2004). Indeed, courts have a "duty to give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal citations and quotations omitted). "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Id.; accord Scott v. U.S., 328 F.3d 132, 139 (4th Cir. 2003) ("[W]e must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.").

Similar to the analysis performed by the United States Supreme Court in Hibbs, in the present case if, as Plaintiff suggests, the reduced hours provisions of subsection C, alone, provided a plan or scheme for addressing a reduction in hours somewhat, or entirely, then the WARN Act would not need the layoff provisions of subsection B, as subsection C, alone, would do all the necessary work. See Hibbs, 542 U.S. at 101. In short, we must presume that Congress intended for every word and phrase of a statute to have meaning, and courts must avoid an interpretation that would render meaningless a distinct statutory provision. See Scott, 328 F.3d at 140. Accordingly, Plaintiff's attempted application of subsection C to the facts of his claim is unlawful and without merit, as well as all other similarly situated claimants who were laid off and called back to work in six months or less.

The United States Court of Appeals for the Seventh Circuit squarely addressed this issue in Leeper v. Hamilton Cnty. Coal, LLC, 939 F.3d 866 (7th Cir. 2019), where the plaintiff attempted

the same maneuver as Plaintiff Gautier does here, and the Seventh Circuit rejected the argument with sound legal analysis of the various and "distinct categories of employment action in § 2101(a)(6)." Leeper at 869. Like the situation addressed by the Seventh Circuit, in this case the Defendants initiated a layoff lasting under six months (certainly for Plaintiff Gautier and many others). "Under Department of Labor guidance, that temporary cessation of the employment relationship wasn't an employment termination under § 2101(a)(6)(A). And because [the Defendants] laid off the affected employees rather than reducing their work hours, § 2101(a)(6)(C) is irrelevant." Leeper at 872.

There is no Fourth Circuit precedent that requires a contrary conclusion. In fact, Leeper is entirely consistent with prior Fourth Circuit opinions, as the Seventh Circuit acknowledges expressly. See id. (discussing Graphic Comm. Intl. Union v. Quebecor Printing (USA) Corp., 252 F.3d 296 (4th Cir. 2001) (recognizing that "if an employee were to receive required notice of an anticipated reduction in hours under 29 U.S.C. § 2101(a)(6)(C), that employee would still be entitled to WARN Act notice if, subsequently, he were either laid off or terminated under the circumstances set forth in 29 U.S.C. § 2101(a)(6)(A) or (B)")). Plaintiff has failed to meet his burden of proof on this issue, and Defendants are entitled to judgment as a matter of law.

Furthermore, Plaintiff Gautier failed to provide sufficient, objective evidence for a reasonable, unbiased jury to conclude that his employment ended by termination rather than layoff. As the Seventh Circuit recognized in Leeper, "the term 'termination' means the permanent cessation of the employment relationship and the term 'layoff' means the temporary cessation of that relationship." 939 F.3d at 869. "[I]f an objective observer would conclude that an employee suffered a permanent cessation of his employment relationship, a § 2101(a)(6)(A) 'employment termination' occurred." Id. at 871. At trial, Plaintiff Gautier admitted that he was given the

opportunity to put his name and number on a call-back list, that he expected to be called back, and that he was in fact called back to work in less than six months, but he declined the offer.  See Exhibit 1 at 71-73, 81-82; see also Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (holding that employees laid off for less than six months did not suffer an "employment loss" although the employees expected the layoffs to be permanent).

In Nelson v. Formed Fiber Technologies, Inc., 856 F.Supp. 2d 235 (D. Me. 2012), the defendant laid off approximately 163 employees.  Shortly afterwards, Formed Fiber sent a letter to the laid-off employees informing them that many of the layoffs likely were permanent.  During the layoff, but before six months had elapsed, Plaintiff Nelson obtained a position with another company, and resigned from his position with Formed Fiber to accept the position.  His decision to take alternative employment was based on his estimation that he was unlikely to be recalled, and ultimately, he was not recalled.  Id. at 238.  The district court granted summary judgment in favor of Formed Fiber on the WARN Act claim, holding that "viewing [the facts] in the light most favorable to Nelson and drawing all reasonable inferences in Nelson's favor, the Court finds that Nelson resigned from Formed Fiber less than six months after being laid off."  Id. at 239.  As a result, the court held Nelson "resigned from his position at Formed Fiber 'before his layoff reached the six-month threshold' and therefore 'before he suffered an employment loss within the meaning of the statute.'"  Id. at 241.  Like the plaintiff in Nelson, Plaintiff Gautier voluntarily resigned from his employment by declining recall before he had been laid off in excess of six months.  His layoff ended when he was offered reinstatement.  His decision not to accept the position constituted a voluntary resignation, so he did not suffer an employment loss under the WARN Act.

Failure of Plaintiff's claim requires dismissal of the entire lawsuit.  In Banks v. Multi-Family Management, Inc., 554 F.2d 127 (4th Cir. 1977), the Fourth Circuit held that the failure of

a class representative's claim required dismissal of the suit, because the plaintiff could not meet the "adequacy" requirements of class certification. The defendant in <u>Banks</u> consented to an injunction which resulted in a situation in which the plaintiff had no risk of suffering damages. Because "plaintiff was no longer 'injured in fact' she would not benefit in any tangible way from any further court intervention . . . and she was no longer an adequate representative of the class." Id. at 128-29. As a result, the Fourth Circuit upheld dismissal of the suit in its entirety.

The same logic applies here. Plaintiff Gautier cannot prevail on his claims, so he is not an adequate representative of any potential class of plaintiffs. Plaintiff did not suffer an employment loss, so he has no real interest remaining in this litigation and cannot benefit therefrom. With Plaintiff's claims dismissed with prejudice, this case should be dismissed in its entirety. The Supreme Court has explicitly held that for a class action to continue, there must be a named plaintiff who presents "a controversy at the time the complaint is filed, and at the time the class is certified by the District Court pursuant to Rule 23." <u>Sosna v. Iowa</u>, 419 U.S. 393, 402 (1975). Because Plaintiff's claims were never valid, there is no named plaintiff who meets these criteria, and the Defendants are entitled to judgment as a matter of law.

WHEREFORE, for all the foregoing reasons and those apparent to the Court, the Defendants respectfully request that the Court set aside the judgment previously entered in this matter and enter judgment as a matter of law in favor of the Defendants on all claims asserted in Plaintiff's Complaint and otherwise, that Defendants be awarded their costs and attorney fees, that this purported class action be closed and removed from the active docket of this Court; and the Defendants pray for such other relief as the Court deems just and proper.

## II.    New Trial

Pursuant to Rule 59 of the Federal Rules of Civil Procedure,

> [I]t is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

Cisson v. C.R. Bard, Inc., 86 F.Supp.3d 510, 513 (S.D. W.Va. 2015) (quoting Atlas Food Sys. & Svcs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587 (4th Cir. 1996)). "[T]he crucial inquiry . . . is whether an error occurred in the conduct of the trial that was *so grievous* as to have rendered the trial unfair." Cisson at 513 (quoting Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182 (4th Cir. 1994)). "[S]ubstantial errors in admission or rejection of evidence may warrant a new trial." Cisson at 514 (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243 (1940)). Also, "providing the jury with improper instructions can justify a new trial." Cisson at 521 (citing Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888 (4th Cir. 1980)). A new trial is appropriate "when it is not possible to reconcile the [jury's] findings." TransDulles Center, Inc. v. USX Corp., 976 F.2d 219, 227 (4th Cir. 1992). "The decision to grant or deny a new trial is within the sound discretion of the trial court." Cisson at 514 (quoting Cline v. Wal–Mart Stores, Inc., 144 F.3d 294 (4th Cir. 1998)).

### A. Denial of Defendants' Right to Object on the Record Prior to Instructing the Jury

Rule 51(b)(2) of the Federal Rules of Civil Procedure requires the Court to "give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered." In this case, the Court held a lengthy charge conference off the record, during which counsel for the Defendants indicated that Defendants were agreeable to the jury instructions as proposed by the Court in its initial draft, except that Defendants requested the addition of Defendants' Jury Instruction No. 6, to address the evidence that a jury can consider in the context of whether the same set of facts can support more than one alleged employment loss

13

under the WARN Act.  The Court refused Defendants' Jury Instruction No. 6, and also addressed and incorporated numerous changes to the charge that were requested by the Plaintiff, to which the Defendants objected but were not given any opportunity to place such objections on the record prior to the charge being delivered to the jury.  See Exhibit 2 at 82-121.  The right to preserve objections on the record for purposes of appeal is a substantial right for the parties, and denial of that right as required by Rule 51(b)(2) undermines the Defendants' right to a fair legal process.

### B.       Improper Instructions and Special Interrogatories

As the Defendants argued in their Motion for Summary Judgment (Doc. 88, 89, 96) and elsewhere, there are three distinct provisions of Section 2101(a)(6) that cannot be intermingled, and a particular set of facts and circumstances can only support a single violation.  See Leeper v. Hamilton Cnty. Coal, LLC, 939 F.3d 866 (7th Cir. 2019); Graphic Comm. Intl. Union v. Quebecor Printing (USA) Corp., 252 F.3d 296 (4th Cir. 2001) (recognizing that "if an employee were to receive required notice of an anticipated reduction in hours under 29 U.S.C. § 2101(a)(6)(C), that employee would still be entitled to WARN Act notice if, subsequently, he were either laid off or terminated under the circumstances set forth in 29 U.S.C. § 2101(a)(6)(A) or (B)").  Based on this legal principle and the evidence developed in this matter, the Defendants objected to the inclusion of any instruction addressing a reduction in hours under Section 2101(a)(6)(C) because the evidence did not support any reduction in hours.  The Court overruled this objection and included a specific section in the instructions entitled "Reduction in Hours."  The Defendants then advised the Court that, if this section would remain in the instructions over Defendants' objection, then Defendants' proposed Jury Instruction No. 6 must also be included to address the evidence that a jury can consider in the context of whether the same set of facts can support more than one alleged employment loss under the WARN Act.  See Exhibit 2 at 121-24.  The Court denied this request

14

and improperly excluded Defendants' proposed Jury Instruction No. 6.  For the same reasons, the Defendants also objected to the inclusion of Question No. 4 on the Special Interrogatories.

Except for these objections, the Defendants indicated they were agreeable to the jury instructions and special interrogatories as proposed by the Court in its initial draft (attached hereto as **Exhibit 3** and **Exhibit 4**, respectively).  Plaintiff's counsel, however, insisted that any reference to Plaintiff Gautier must be removed from the "Employment Loss" section of the instructions, and also from questions 3 and 4 of the special interrogatories.  Plaintiff maintained that he did not need to prove that he had suffered an employment loss under the WARN Act, but the jury need only find that 50 or more full-time employees suffered an employment loss.  The Defendants objected to this alteration of the instructions and special interrogatories, because the parties had confirmed at the pretrial conference this was a representative trial with Plaintiff Gautier as a representative of the class and, as the Defendants understood, the jury would be required to make a determination that Plaintiff Gautier had suffered an employment loss, and then Plaintiff could show that the class was entitled to monetary recovery if he could show that 50 or more full-time employees had also experienced the employment loss.  See July 22, 2022 Pretrial Conference Transcript at 10-12 (attached hereto as **Exhibit 5**).  Plaintiff of course desired to remove himself from the employment loss analysis because his trial testimony had confirmed that he did not personally experience any event that would qualify as an employment loss under the WARN Act.  He was not laid off in excess of six months, his hours were not reduced because he was laid off, and he was not objectively (or subjectively) terminated because he knew from day one that he would be recalled (and in fact he was recalled).  See Exhibit 1 at 81-82.  This surprise maneuver by Plaintiff's counsel was contrary to the trial format set forth at the Pretrial Conference and the expectations of Defendants' counsel, and therefore undermined the Defendants' right to a fair legal process.

Moreover, the improper instructions and special interrogatories led to a result that is not possible to reconcile. Defendants' objection to the substance of the special interrogatories is highlighted by the fact that the jury determined that at least 50 full-time employees were terminated from employment, AND at least 50 full-time employees had their hours reduced by more than 50%, a result that is inconsistent, illogical, and unsupported by the evidence. There is no possible way that a reasonable, unbiased jury could reach either conclusion, because the jury heard evidence only from and about employees of Tams Management, Inc., which, according to payroll records and summaries produced in this matter, had only 44 total employees during the relevant time period, and only 31 were considered full-time under the WARN Act. See Plaintiff's Trial Exhibits 14 and 15 (Docs. 132-17 and 132-18). Also, the simple math necessary to support the jury's determination that 50 full-time employees were terminated AND 50 full-time employees had their hours reduced would require 100 full-time employees in the purported class, because a single employee cannot be terminated and have his hours reduced during the same event. Logically, if an employee is working any hours, then he has not been terminated, and if he has been terminated, then there are no hours to reduce. But the purported class contains only 90 full-time employees in total. See Plaintiff Trial Exhibits 14 and 15 (Docs. 132-17 and 132-18). So which of the employees were terminated, and who had their hours reduced? The jury's answers to the special interrogatories are logically inconsistent and lack sufficient evidentiary support, and therefore a new trial is appropriate because "it is not possible to reconcile the [jury's] findings." TransDulles Center, Inc., 976 F.2d at 227.

## C.    Exclusion of Defendants' Exhibit 7

During direct examination of defense witness Leslie Wells, Defendants' counsel attempted to introduce into evidence a summary document identified as Defendants' Exhibit No. 7 (Doc.

134-1). The intent of the summary document was to summarize information in the voluminous payroll records. The document is almost identical to Plaintiff's Exhibit 14 and it is also a document which originally was created by Plaintiff's counsel and has been submitted to this Court multiple times in various pleadings. The only information that was added in summary form for purposes at trial are the references to specific payroll documents, and the intent of using the document is to provide ease of reference to individuals who were alleged to have suffered an employment loss, to payroll documents which actually show that they were back to work during that employment period. The Court sustained Plaintiff's objection feigning surprise, and improperly excluded Defendants' Exhibit No. 7 from evidence. See Exhibit 2 at 40-52.

As the Court recognized, the payroll records submitted for the jury's consideration "are very intensive from the standpoint of just the sheer size." Id. at 50. Consequently, counsel for the Defendants sought to use Exhibit 7 as a reference for the jury to confirm that certain employees had not suffered any employment loss, and that many had never missed a paycheck, although they had been transferred to another payroll but still performing the same or essentially the same job for the same "single employer" at this "single site of employment." It is unimaginable to expect that the jury would take the time to flip through hundreds of pages of payroll records to consider these facts, and this simple summary document was the only process through which the Defendants could develop a method of reference for the jury that would assist the analysis of a key component of the defense, i.e. there were no more than forty-one (41) full-time employees who might possibly qualify for inclusion in the purported class. Exclusion of this exhibit was prejudicial because the Defendants had no other way of developing this component of the defense, except to attempt to go through each page of the payroll records and identify each employee individually, which would have taken an extraordinary amount of time and likely would have confused and/or angered the

jury.  To require the Defendants to do so would be inconsistent with substantial justice, and therefore a new trial is appropriate because exclusion of Defendants' Exhibit No. 7 effectively denied the Defendants' substantial right to defend the claims on the merits.  <u>See</u> Fed. R. Civ. P. 61; Fed. R. Evid. 103(a).

WHEREFORE, for all the foregoing reasons and those apparent to the Court, in the alternative to judgment as a matter of law as requested herein, the Defendants respectfully request that the Court set aside the judgment previously entered in this matter and award the Defendants a new trial on all issues and claims asserted in Plaintiff's Complaint and otherwise, that Defendants be awarded their costs and attorney fees; and the Defendants pray for such other relief as the Court deems just and proper.

Respectfully Submitted,

TAMS MANAGEMENT, INC.,
PAY CAR MINING, INC.,
BLUESTONE INDUSTRIES, INC,
BLUESTONE RESOURCES, INC., and
BLUESTONE COAL CORP.,

By Counsel,

 /s/ *Ronald H. Hatfield, Jr.*
Ronald H. Hatfield, Jr. (WVSB No. 8552)
General Counsel - Litigation
302 S. Jefferson Street
Roanoke, VA 24011
Tel: 540-613-1460
Fax: 540-301-0761
ron.hatfield@bluestone-coal.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald H. Hatfield, Jr., hereby certify that a copy of the foregoing ***"Defendants'***

***Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for a New***

***Trial"*** was served upon all known parties and counsel of record via the Court's CM/ECF electronic

filing system, on **April 24, 2023**, as follows:

Samuel B. Petsonk, Esquire
Petsonk PLLC
PO Box 1045
Beckley, WV 25802

and

Bren J. Pomponio, Esquire
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
*Counsel for Plaintiff*


   /s/ *Ronald H. Hatfield, Jr.*
Ronald H. Hatfield, Jr., Esq. (WVSB #8552)