## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

JULES GAUTIER,
*individually and on behalf of all*
*others similarly situated*,

        Plaintiffs,

v.                                                    CIVIL ACTION NO.   5:20-cv-00165

TAMS MANAGEMENT, INC,
PAY CAR MININC, INC.,
BLUESTONE INDUSTRIES, INC.,
BLUESTONE RESOURCES, INC.,
BLUESTONE COAL CORP.,

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

Pending is Plaintiff Jules Gautier's Motion to Amend Judgment Order and For Attorney Fees and Expense and Proposed Class Notice [ECF 162], filed April 10, 2023. Defendants Tams Management, Inc., Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Resources, Inc., and Blue Coal Corporation responded in opposition on April 24, 2023. [ECF 166]. Mr. Gautier replied on May 1, 2023 [ECF 167]. Also pending are Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial [ECF 164], and Motion to Alter or Amend Judgment Order [ECF 165], both filed April 24, 2023. On May 8, 2023, Mr. Gautier responded in opposition to Defendants' motions [ECF 168 and 169]. Defendants replied on May 15, 2023 [ECF 170 and 171]. On March 8, 2024, Mr. Gautier moved for leave to file a proposed order approving attorney fees, expenses, and proposed class notice, and a proposed amended judgment [ECF 172]. The matters are ready for adjudication.

**I.**

Mr. Gautier, individually and on behalf of a similarly situated class, instituted this action for violations of the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101-2109 [Doc. 1]. Mr. Gautier alleged Defendants failed to provide the required sixty-day notice to their fulltime employees prior to laying off more than 50 of them beginning in October 2019 at the Burke Mountain Mine Complex in McDowell County.

On August 9 and 10, 2022, a jury trial was held, resulting in four answers to special interrogatories favoring Mr. Gautier. [ECF 129]. The jury first determined Defendants Tams Management, Inc., Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Resources, Inc., and Bluestone Coal Corp., were a "single employer" under the WARN Act. *Id.* Second, the jury found the Burke Mountain Mine Complex was a "single site of employment" under the WARN Act. *Id.* Third, the jury found 50 or more of the Defendants' fulltime employees at the Burke Mountain Mine Complex were terminated. Fourth, the jury found 50 or more of the Defendants' fulltime employees had their hours reduced by more than 50% for every month in any six-month period beginning on October 14, 2019. *Id.*

On March 27, 2023, the Court entered judgment in favor of Mr. Gautier for $1,750,102.34 [ECF 161]. Mr. Gautier filed the Motion to Amend Judgment Order and for Attorney Fees and Expenses and Proposed Class Notice. He seeks a statutory attorneys' fee and expense award of $267,578.64 and a $15,000 class representative service fee for himself. He also seeks inclusion of a $30,000 civil penalty for Wyoming and McDowell Counties, along with a description of the class to conform with *Federal Rule of Civil Procedure* 23(c)(3). Finally, he seeks approval of the proposed notice of class judgment.

2

Defendants filed their Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial. Respecting the Renewed Motion for Judgment as a Matter of Law, Defendants allege there is insufficient evidence to support the jury's findings. In the alternative, they seek a new trial based on the following: (1) the denial of Defendants' right to object on the record prior to jury instructions being delivered in open court, (2) the use of improper instructions and special interrogatories, and (3) the exclusion of Defense Exhibit 7. Defendants also filed a Motion to Amend Judgment, seeking a reduction in the amount previously awarded by the Court.

## II.

The WARN Act requires an employer to provide 60-days' notice before ordering a "plant closing" or "mass layoff." 29 U.S.C. § 2102(a). "An employer who fails to provide this notice is liable to each affected employee for backpay, benefits, and attorney's fees." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007) (citing 29 U.S.C. § 2104(a)). In addition, the WARN Act imposes a civil penalty on employers to be paid to the unit of local government entitled to notification under the Act. 29 U.S.C. § 2104(a)(3).

To succeed on a claim under the WARN Act, plaintiffs must show (1) there was a "mass layoff" or "plant closing" as defined by the Act; (2) the layoff was conducted by an "employer" covered by the Act; and (3) the employer terminated employees who were covered by the Act and thus who were entitled to notice. *McKenzie v. CDA, Inc.*, 3:19-cv-213, 2021 WL 1220620, at *8 (W.D.N.C. Mar. 31, 2021).

A "mass layoff" is a "reduction in force . . . not the result of a plant closing[, which]

results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees . . . and . . . at least 50 employees." 29 U.S.C. § 2101(a)(3). A "plant closing" is

> [t]he permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees.

29 U.S.C. § 2101(a)(2).

The WARN Act defines "employer" as "any business enterprise that employs . . . 100 or more employees, excluding part-time employees." *Schmidt v. FCI Enters. LLC*, 3 F.4th 95, 101 (4th Cir. 2021) (citing 29 U.S.C. § 2101(a)(1)(A)). An affected employee who is entitled to notice under the Act is an employee "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). The applicable Department of Labor regulations define an "employment loss" as "(i) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (ii) a layoff exceeding 6 months, or (iii) a reduction in hours of work of individual employees of more than 50% during each month of any 6–month period." 20 C.F.R. § 639.3(f).

## III.

### A. *Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial*

#### 1. Judgment as a Matter of Law

*Federal Rule of Civil Procedure* 50(b) provides "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b). It is well-established that "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a)" and "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015). Our Court of Appeals has observed as follows:

> [W]here . . . a party did not move for judgment as a matter of law before moving for a new trial, this Court's "scope of review is exceedingly confined, being limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency." In other words, we must affirm the district court's denial of Doe's motion for a new trial unless "there was an absolute absence of evidence to support" the jury's finding that the School Board lacked actual notice.

*Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 269 (4th Cir. 2021) (cleaned up).

When a jury verdict is returned, judgment as a matter of law may be granted "only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Int'l Ground Transp. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 218–19 (4th Cir. 2007); *see also Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002). In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"Judgment as a matter of law is a remedy to be applied sparingly and only in the most extraordinary circumstances." *Sawyer v. Asbury*, 861 F. Supp. 2d 737, 745 (S.D. W. Va. May

18, 2012). "A court . . . may not disturb the [jury] verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009). "Generally, a judgment as a matter of law is appropriate 'when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.'" *CSX Transp., Inc. v. Peirce*, 974 F. Supp. 2d 927, 933 (N.D. W. Va. Sept. 25, 2013) (quoting *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 562 F.3d 295, 305 (4th Cir. 2009)). However, "[i]f the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof," the movant is entitled to judgment pursuant to Rule 50(b). *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2006) (internal citations omitted).

### a.      *Prefatory Observations*

Before turning to the merits of Defendants' contentions, two preliminary matters required discussion. First, in the March 2, 2023, Memorandum Opinion and Order [ECF 157], the Court concluded Defendants failed to properly renew their motion under *Rule* 50(b). In revisiting the ruling, *Rule* 50(b) permits a motion to be made "[n]o later than 28 days after the entry of judgment." Judgment was not entered until March 27, 2023 [ECF 161]. Thus, Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial [ECF 164], filed April 24, 2023, is timely.

Second, a repetitive argument made by the Defendants multiple times in each of the pending motions may be dispensed with summarily. Defendants continue to assert the same set of facts can only be used to support one type of employment loss under 29 U.S.C. § 2101(a)(6). In its August 8, 2022, Memorandum Opinion and Order, the Court rejected the Defendants'

6

interpretation of § 2101(a)(6). [ECF 117]. There is no basis for considering that ruling anew. The argument is rejected.

The Court now turns to Defendants' sufficiency of the evidence challenges. They challenge the sufficiency of the evidence (1) supporting a class of adequate number under the statute, and (2) supporting Mr. Gautier's adequacy as a class representative.

### b.     *Insufficient Evidence of a Class*

Turning to the merits, Defendants assert three reasons there is insufficient evidence to support the findings and verdict supporting the Judgment: (1) Mr. Gautier failed to amend his pleadings to include employment loss under 29 U.S.C. § 2101(a)(6)(A) and (C), (2) Mr. Gautier failed to prove at least 50 full-time employees suffered an employment loss, and (3) some full-time employees were rehired by the single employer.

The Court has previously addressed and rejected the first contention. While Mr. Gautier neglected to amend his pleading, Defendants were aware of the theory of the case throughout discovery. [ECF 117 at 13]. Additionally, the integrated pretrial order raises the theory, thus obviating the necessity of amendment. [*Id.*]; *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) ("Here, we have not only an amended complaint, but a final pretrial order that superseded all prior pleadings and 'controll[ed] the subsequent course of the action,' Fed. Rule Civ. Proc. 16([d])."); *Curtis v. Loether*, 415 U.S. 189, 190, n.1 (1974) (Where a claim was not included in the complaint, but was included in the pretrial order, "it is irrelevant that the pleadings were never formally amended." (citing Fed. R. Civ. P. 15(b), 16[d])). For these reasons, along with the balance of the earlier reasoning, Defendants' first contention is meritless.

Respecting the second point, it is first noted that Mr. Gautier proved Defendants were a single employer. For example, Patrick Graham, Senior Vice President for Safety and Human Resources for the Bluestone Companies, testified managers of the Burke Mountain Mine Complex were listed on the payroll of Bluestone Industries. They moved throughout various locations supervising employees of other units such as Tams Management and Pay Car. [ECF 164-2 at 12–13]. He also testified those employees on the payroll records under "Frontier" were employed at the 57 Mine located within the Burke Mountain Mine Complex. [*Id.*at 16]. There was other evidence to support the single-employer theory: (1) class member and superintendent at the job Albert Grimmett was compensated by both Tams Management and Bluestone Industries. [ECF 164-1 at 41], (2) Mr. Gautier testified Mr. Grimmett took orders from Kenny "Tiger" Lambert who then reported to Jay Justice, the owner of the Defendant companies [*Id.* at 53], and (3) former employees and class members Shawn Abner and Ronald Matthews testified they considered Tams and Bluestone one and the same [*Id.* at 106, ECF 164-2 at 7]. Having adequately proven the single-employer theory, Plaintiffs turned to the payroll records in Plaintiffs' Exhibit 14. Those records included 164 employees working in the following departments:

**DEPARTMENTS**

| |
|---|
| Tams |
| 30 Pay Car |
| 25 Nufac |
| 20 Mine Support Services |
| 10 Frontier Coal Co. |

[ECF 132-17]. Beside each entry is the last date employed, demonstrating at least 50 full-time employees suffered an employment loss. Based upon the foregoing evidence, Plaintiffs demonstrated in abundance that at least 50 full-time employees suffered an employment loss.

Respecting Defendants' third point, namely, that some full-time employees were rehired by the single employer, they point to putative rehires at Ranger Fuel Corporation and Blackstone Energy Ltd. who should be excluded from the class. Defendants rely heavily on Mr. Graham's deposition testimony to show Ranger Fuel Corporation was part of the single site of employment. Mr. Graham testified that Ranger Fuel Mine is located at Pinnacle Creek and when asked if it is part of the Burke Mountain Mining Complex equivocally said, "I would think so" and explained they exchanged employees back and forth. [ECF 164-2 at 13–14]. That hardly warrants a change in outcome. Coupled with his uncertainty, the puzzlement of Mr. Grimmett, a class member and former employee, is telling. When asked if Ranger Fuel meant anything to him, he stated he "might have heard . . . [of that entity] when [he] worked for the Justices at Coal Mountain, but [he's] not really sure." [164-1 at 124–25]. Defendants' third point is meritless without evidence supporting Ranger Fuel Corporation or Blackstone Energy Ltd. were part of the single employer.[1]

Based upon the foregoing, there was sufficient evidence for a reasonable factfinder to find in Plaintiffs' favor.

### c.    *Insufficient Evidence to Support Mr. Gautier as the Class Representative*

Respecting Defendants' second point "[n]ot every negative turn in employment circumstances constitutes an 'employment loss' for purposes of the WARN Act." *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing* (USA) Corp., 252 F.3d 296, 299 (4th Cir.

---

[1]   In further support of their contentions, Defendants continue to rely on Defense Exhibit 7, urging the Court to rely thereupon to interpret Defendants' admitted payroll records. Defense Exhibit 7 was excluded at trial. There is no basis for revisiting that ruling and Defense Exhibit 7 thus plays no role in the outcome here.

2001). "Employment loss" means (A) an employment termination other than discharge for cause, voluntary departure, or retirement; (B) a layoff exceeding six months; or (C) more than 50% reduction in work hours during each month of any six-month period. *Id.* (citing 29 U.S.C. § 2101(a)(6)).

The distinction between a layoff or termination for the purposes of defining "employment loss" is that "the term 'termination' means the permanent cessation of the employment relationship and the term 'layoff' means the temporary cessation of that relationship." *Long v. Dunlop Sport Grp. Ams.*, 506 F.3d 299, 302 (4th Cir. 2007).

This determination requires an initial categorization of the adverse action experienced by the employee. *Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866, 870 (7th Cir. 2019), *cert. denied* 140 S. Ct. 2568 (2020). As the United States Court of Appeals for the Seventh Circuit stated in *Leeper*, the threshold question is best answered by an objective analysis of the circumstances, not a "hindsight-informed count of how many employees returned within a six-month period." *Leeper*, 939 F.3d at 870. *But see Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1282 (8th Cir. 1996) ("A common sense reading of the [WARN Act] indicates it is the actuality of a termination which controls and not the expectations of the employees.").

Employees have a "reasonable expectation of recall" when they understand, through notification or industry practice, their employment has been temporarily interrupted and they will be recalled to the same or a similar job. 20 C.F.R. § 639.3(a)(1); *see also Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 848 (6th Cir. 2011). Relevant factors in determining the "reasonableness" of the employees' expectations include (1) past experience of the employer,

(2) employer's future plans, (3) circumstances of the layoff or absence, (4) expected length of layoff or absence, and (5) industry practice. *Bledsoe*, 635 F.3d at 848.

This rather esoteric gallop through the governing law takes us to Mr. Gautier's particular employment experience with the Defendants. At trial, Mr. Gautier testified he was orally terminated. [ECF 164-1 at 35]. On October 24, 2019, a day shift employee told him the job was over and everybody was terminated. [*Id.*]. Mr. Gautier continued onto the job site where C Crew Foreman Billy McClung told Mr. Gautier of a shut down and operations cessation. [*Id.*]. Mr. Gautier testified he and his co-workers did not expect to be recalled. As noted, Mr. Gautier instituted this action on March 4, 2020 [ECF 1]. On April 22, 2020, Mr. Graham called Mr. Gautier to offer him employment at the Burke Mountain Mine Complex [ECF 164-1 at 62]. The offer would have allowed Mr. Gautier to work on April 23 and 24, 2020. [ECF 168 at 11]. It is rather telling that April 24, 2020, would have been the end of the six-month period following Mr. Gautier's termination. Coincidentally, it was also the day Defendants filed their answers. [ECF 4 and 5].

The evidentiary timeline provides sufficient evidence to support the finding that, on October 24, 2019, Mr. Gautier was terminated and that the offer for employment on April 22, 2020, did not recharacterize the termination into a layoff under the WARN Act.

Based upon the foregoing discussion, the Court **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law.

## 2. New Trial

Rule 59(a) of the *Federal Rules of Civil Procedure* provides, in pertinent part, that "[t]he court may, on motion, grant a new trial for any reason for which a new trial has heretofore

been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(a); *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) Our Court of Appeals has observed that "'[a] district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice.'" *Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 555 (2024) (quoting *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017)); *see also Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.1996). When "'considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of witnesses.'" *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010) (quoting *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir.1995) (internal citations omitted)); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). Substantial errors in the "admission or rejection of evidence or instructions to the jury" may support a new trial. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *see also RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 243 (4th Cir. 2015); *Cisson v. C.R. Bard, Inc.*, 86 F. Supp. 3d 510, 514 (S.D.W. Va. 2015) (Goodwin, J.).

The decision regarding a motion for a new trial "is within the sound discretion of the trial court." *Cline*, 144 F.3d at 301; *see also Ramaco Res., LLC v. Fed. Ins. Co.*, 74 F.4th 255, 266 (4th Cir. 2023). A trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." *United States v. Miller*, 41 F.4th 302, 315–16 (4th Cir. 2022) (cleaned up).

### a. *Denial of Defendants' Right to Object on the Record*

*Rule* 51(b)(2) provides "[t]he court: must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered."

Defendants assert an infringement of their substantial rights inasmuch as they were precluded from objecting to the jury instructions in accordance with Rule 51(b)(2).

Prior to delivering the instructions, the Court conducted a charge conference with counsel in Chambers. Neither party lodged an objection to this procedure. The Court then delivered the instructions to the jury. Immediately after excusing the jury to deliberate, the Court provided the Rule 51(b)(2) opportunity. [ECF 164–2 at 121, 124]. At that point, Defendants objected on the record to (1) the replacement of Mr. Gautier with "50 or more employees" in the instructions and special interrogatories, (2) the entirety of the reduction in hours section including Special Interrogatory Number 4, and (3) the failure to include Defense Jury Instruction 6. Importantly, no request to reinstruct the jury was made by the Defendants following the delivery of the instructions and Defendants' objections. Had such a request been made, the Court would have considered the request and reinstructed the jury if necessary.

There was no prejudice, much less a miscarriage of justice, arising from the putative omission Defendants identify. If an error occurred at all, it was of the meaningless, technical type. And it was consequently not one for which a new trial should be ordered.

### b.    *Alleged Improper Instructions and Special Interrogatories*

Defendants also assert the substitution of Mr. Gautier with "50 or more of Defendants' full time employees" in the special interrogatories undermined their right to a fair legal process. They base the argument on two justifications: (1) this was a representative trial as discussed at the pretrial conference, and (2) Mr. Gautier did not suffer an employment loss.

Inasmuch as the Court earlier found Mr. Gautier suffered an employment loss and was likewise an appropriate class representative, the technical substitution did not undermine

Defendants' right to a fair legal process. The change was frankly necessary to properly present the matter to the jury. There was no prejudice, much less a miscarriage of justice, arising from the change. If an error occurred at all, it was of the meaningless, technical type. And it was consequently not one for which a new trial should be ordered.

Accordingly, the Court **DENIES** Defendants' Motion for a New Trial based on the substitution of Mr. Gautier.

### c.    *Exclusion of Defendants' Exhibit 7*

The Court first notes the terms of *Rule* 61, which governs the analysis for exclusion of Exhibit 7:

> Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61. Under *Federal Rule of Evidence* 103 "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a *substantial right* of the party…." (emphasis added). "An error affects substantial rights 'in most cases' if it 'affected the outcome of the district court proceedings.'" *United States v. Garcia-Lagunas*, 835 F.3d 479, 493 (4th Cir. 2016) (quoting *United States v. Ramirez–Castillo*, 748 F.3d 205, 215 (4th Cir. 2014)).

Defendants contend that the Court's exclusion of Defense's Exhibit 7 resulted in the denial of Defendants' substantial right to defend the claims on the merits. At trial, the Court correctly excluded the exhibit for failure to disclose pursuant to *Rule* 26(a)(3)(A)(iii). *Rule* 37(c)(1) provides "[i]f a party fails to provide information . . . . as required by *Rule* 26 . . . ., the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.*

There was no showing of substantial justification, much less that the failure to disclose was harmless. The exclusion of Exhibit 7 was thus textually justified. The Court **DENIES** Defendants' Motion for a New Trial based on the exclusion of Defendants' Exhibit 7.

### B.    *Motion to Alter or Amend Judgment Order*

Pursuant to *Rules* 52(b), 59(e), and 60, Defendants request to alter or amend the Judgment Order for two reasons, specifically (1) the duplicative inclusion of Mr. Eli Walkup in Plaintiff's Second Addendum to Expert Report that resulted in excess damages in the amount of $11,358.64, and (2) a listing of forty-nine employees who putatively did not experience either termination of employment or reduction in hours of work and who therefore should be excluded from the class. Regarding the first contention, Mr. Gautier admits the inclusion of Mr. Walkup twice was a clerical error and the award should be reduced by $11,358.64 to $1,738,743.70. Regarding the second contention, Defendants are simply attempting to relitigate whether the listed employees experienced a termination or reduction in hours. The governing rules provide no basis for doing so in this restrictive, post-Judgment setting.

Accordingly, the Court **GRANTS** in part and **DENIES** in part the Motion to Alter or Amend Judgment Order.

### C.    *Motion to Amend Judgment Order and for Attorney Fees and Expense and Proposed Class Notice*

#### 1. Fees and Expenses

"A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When awarding such fees, the following pertinent procedures apply:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

*Id.*

At the Court's discretion, the WARN Act allows a prevailing party to recover a reasonable attorney's fees as part of the costs.  29 U.S.C. § 2104(a)(6) ("In any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.") "The party seeking attorneys' fees has the burden of proving that the rate claimed and the hours worked are reasonable." *E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs,* 724 F.3d 561, 569 (4th Cir. 2013) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). "Principles construing what constitutes a 'reasonable fee' apply uniformly to federal fee-shifting statutes." *Id.* at 570 (citing *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)).

"The proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013); *Jones v. Southpeak Interactive Corp. of Delaware,* 777 F.3d 658, 675 (4th Cir. 2015).

16

First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. Second, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. [Third], the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*Jones v. Southpeak Interactive Corp. of Delaware,* 777 F.3d 658, 675–76 (4th Cir.2015) (cleaned up); *McGee v. Cole*, 115 F. Supp. 3d 765, 771 (S.D.W. Va. 2015). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)." *McAfee*, 738 F.3d at 88 (4th Cir. 2013).

Our Court has characterized the twelve *Johnson* factors as follows: "(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Id.* at 88 n. 7 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978)).

"The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88–89; *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). However, "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. "First, an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554–55. "Second, an enhancement may be appropriate if the attorney's

performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id.* at 555. "Third, there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees." *Id.* at 556.

Like 42 U.S.C. § 1988, another federal fee-shifting statute, 29 U.S.C. § 2104(a)(6), provides the prevailing party is eligible for the award of attorney's fees. In the context of § 1988, the Supreme Court has held "that statutory awards of fees can coexist with private fee arrangements." *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990). Fee-shifting statutes like 42 U.S.C. § 1988 and 29 U.S.C. § 2104(a)(6) control "what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id.* at 110. Accordingly, "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Id.*

The attorney fee proposed by Mr. Gautier in his motion "equals the contractual contingent fee of 33% of the total benefits secured for the class by counsel, as reduced by the statutory fees and expenses that may be awarded by this Court on a lodestar basis … for a final contingent fee of twenty percent." [ECF 162 at 2]. The supporting calculations provided by Mr. Gautier are all incorrect given the earlier-stated correction of the Judgment. Calculated under the corrected Judgment of $1,738,743.70, Mr. Gautier's numbers are as follows: $1,738,743.70 (Judgment) + $221,985.00 (lodestar fees with multiplier) + $45,593.64 (expenses) + $15,000 (class representative service fee) = $2,021,322.34.

Pursuant to a contingent fee agreement of 1/3, Mr. Gautier multiplied $2,021,322.34 by 1/3 equaling $673,774.11. Mr. Gautier then reduced this proposed contingent fee by $267,578.64 ($221,985.00 (lodestar fees with multiplier) + $45,593.64 (expenses)) equaling

18

$406,195.47. After that adjustment the proposed contingent fee from the judgment award of $406,195.47 constitutes 20.1% of $2,021,322.34. For purposes of attorneys' fees and expenses, Mr. Gautier proposes that the Defendants would pay the following: $1,738,743.70 (judgment award), the statutory attorney fees ($221,985.00), expenses ($45,593.64), and the class representative service fee ($15,000.00).

At the outset of its calculations, the Court must address Mr. Gautier's request to amend the judgment to include $45,593.64 in expenses to Mountain State Justice, Inc. and Petsonk PLLC, and $15,000 to Jules Gautier as a class representative service fee. Upon review, the expenses and class service fee appear rational and justified. Accordingly, the Court awards $45,593.64 in expenses to Mountain State Justice, Inc. and Petsonk PLLC, and $15,000 to Jules Gautier as a class representative service fee.

The first step in the proper calculation of attorneys' fees requires the Court to determine the lodestar figure. Based on the spreadsheets detailing their time entries, Mr. Gautier proposed a lodestar figure of $110,992.50. [ECF 163 at 8]. Defendants did not object to the calculation of the unenhanced lodestar.

In determining the lodestar figure, the Court must use the *Johnson* factors to assure reasonableness. First, the attorneys and paralegals at Mountain State Justice, Inc. ("Mountain State Justice") billed a total of 218 hours and 42 minutes in this matter for $60,151.50. [ECF 162-5 at 27]. The attorneys at Mountain State Justice billed at an hourly range from $250 to $425 per hour. [ECF 162-4 at 3]. Mr. Pomponio's hourly rate was the highest at $425 per hour. The paralegal billed her work at $130 per hour. Sam Petsonk of Petsonk PLLC billed $50,841 at $315 per hour for a total of 161 hours and 24 minutes. [ECF 162-3, 162-6]. Second, the questions presented in

19

this action were not novel of difficult. The allegations were for clear violations of the WARN Act. Third, Mr. Pomponio and Mr. Petsonk both have experience litigating cases under the WARN Act. [ECF 162-4 at 2, 163 at 7]. Additionally, Mr. Petsonk has experience serving as class counsel in numerous cases. [ECF 162-3 at 2]. Fourth, the attorneys took this class action pursuant to a contingent fee agreement. Fifth, the affidavits of Mr. Pomponio and Mr. Petsonk provide their hourly rates are within the reasonable, community range. For example, the affidavit of Mr. Pomponio provides that he was awarded an hourly rate of $425 in the Northern District of West Virginia for his representation of a class of employees under the WARN ACT. [ECF 162-4 at 3]. Mr. Petsonk's affidavit provides he is routinely awarded $315 per hour for various legal matters. [ECF 162-3 at 1].

Sixth, the Court is unaware of the attorneys' expectations at the outset of litigation. Seventh, the Court is unaware of any time limitations imposed by the client or circumstances. The Court would note that the matter was filed in March 2020. Eighth, this matter resulted in a judgment of $1,738,743.40 for the 164 class members. Ninth, Mr. Pomponio has been a member of the West Virginia Bar since October 1998 and has "extensive experience" serving as counsel in employment cases. He previously served as a federal law clerk in the Southern District of West Virginia [ECF 162-4 at 2]. Mr. Petsonk graduated law school in 2013 and has served as class counsel in numerous employment-related class actions. Mr. Petsonk is also a past president of the West Virginia Employment Lawyers' Association. [162-3 at 1]. Tenth, Mr. Gautier asserts the undesirability of this action is apparent based on the infrequent litigation of such claims in West Virginia. Eleventh, the specifics of the nature and length of the professional relationship are unknown to the Court. Twelfth, "in more than 30 WARN actions class counsel was awarded a

20

one-third fee." *Guippone v. BH S & B Holdings, LLC, 2011 WL 5148650*, at *9 n.2 (S.D.N.Y. Oct. 28, 2011) (collecting cases). Upon review of the twelve *Johnson* factors, the Court agrees with Mr. Gautier's calculations and determines the lodestar figure to be $110,992.50.

The second step requires the Court to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Mr. Gautier prevailed on all claims he brought; thus no deduction is necessary. The third and final step requires the Court to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." As Mr. Gautier prevailed on all his claims, a judgment of $1,738,743.40 has been awarded and will be divided amongst the 164 class members. Accordingly, the Court determines the lodestar figure of $110,992.50 to be a reasonable fee.

Mr. Gautier contends the lodestar figure is properly enhanced based on two factors. First, he asserts the hourly rate of Mr. Petsonk does not adequately measure his true market value. In support of this assertion, Mr. Gautier asserts Mr. Petsonk's hourly rate is $315.00, while his co-lead trial counsel Mr. Pomponio's rate is $425.00. [ECF 163 at 7]. Second, he asserts delay in payment of fees unjustifiably caused by the Defendants. Defendants object to Mr. Gautier's enhancement of the lodestar figure based on their alleged delay.

*Perdue* does permit enhancement of the lodestar when the hourly rate does not adequately measure the attorney's true market value, but the Court notes "[t]his may occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors." 559 U.S. at 555. Mr. Petsonk's four-page affidavit concerning his legal fee clearly addresses more than just his years admitted to the bar. Mr. Petsonk mentions his past leadership experience in legal organizations, his experience

21

as class counsel, his law school extracurriculars and internships, public interest fellowships, and prior public service experience. [ECF 162-3]. At the conclusion of Mr. Petsonk's Affidavit, he states, "I am informed that the market rate in this community for an attorney, with my level of experience and academic background, working on claims involving workers' rights, is $250.00 to $350.00 per hour." [*Id.* at 4]. Accordingly, Mr. Petsonk's legal fee is not based solely on his years of admission to the bar and is not applicable for the enhancement.

Additionally, even if the Court were to consider the enhancement, the multiplier utilized by Mr. Gautier overly accounts for the difference in billing rates between Mr. Pomponio and Mr. Petsonk. In total, Mr. Pomponio billed 87 hours and 6 minutes on the matter for a total fee of $37,017.50. [ECF 162-5]. Mr. Petsonk billed 161 hours and 24 minutes on the matter for a total fee of $50,841.00. [162-6]. If Mr. Petsonk were to bill at Mr. Pomponio's rate as Mr. Gautier suggests, Mr. Petsonk's new total fee would be $68,595.00. The difference between Mr. Petsonk billing at the higher rate and his actual rate would only be $17,754.00.

The second factor Mr. Gautier bases his enhanced lodestar figure on is the delay in payment of fees unjustifiably caused by the Defendants. [ECF 163 at 9]. In relation to the second factor, Mr. Gautier relies on the Mediator's Report [ECF 92] where Magistrate Judge Aboulhosn concluded "based upon the Defendants' mediation material, mediation appeared to be fruitless." *Id.* at 1. Mr. Gautier also contends Defendants delayed bringing the case to final resolution by advancing a meritless position, specifically that Mr. Gautier was not laid off more than six months. Lastly, he asserts the Defendants have employed similar delay tactics in other cases where Mr. Petsonk was counsel.

Defendants respond stating they merely asserted their "right to adjudication of these

22

novel and difficult questions." Among other contentions, Defendants also assert Mr. Gautier increased his demand from the first to second mediation, negating any possibility of settlement.

There is simply no basis for the enhancement on this record. Assuming the Court found such an enhancement to be warranted, Mr. Gautier failed to provide the Court with the calculations necessary to award an enhancement for unjustifiable delay.

Accordingly, the Court awards $110,992.50 as the statutory attorney fee permitted under the WARN Act. With the new lodestar figure, the calculations are as follows for the applicable contingent fee: $1,738,743.70 (class damages) + $110,992.50 (lodestar figure) + $45,593.64 (expenses) + $15,000 (class representative service fee) = $1,910,329.84. Pursuant to a contingent fee agreement of 1/3, the proposed contingent fee is $636,776.61, which is then reduced by $110,992.50 (lodestar figure) and $45,593.64 (expenses). The final contingent fee is $480,190.47.

## 2. Civil Penalty to Local Government

Mr. Gautier asks the Court to amend the judgment and direct the Defendants to pay $15,000 to the Wyoming County Commission and $15,000 to the McDowell County Commission as part of the statutory civil penalty provided for in the WARN Act.

The WARN Act provides that employers must provide notice of a plant closing or mass layoff not only to affected employees, but also to "the chief elected official of the unit of local government within which such closing or layoff is to occur." 29 U.S.C. § 2102(a). Any employer that fails to give such notice to a local government "shall be subject to a civil penalty of not more than $500 for each day of such violation." *Id.* § 2104(a)(3). Moreover, "[a] person seeking

to enforce such liability . . . may sue either for such person or for other persons similarly situated, or both." *Id.* § 2104(a)(5). "[T]he term 'unit of local government' means any general purpose political subdivision of a State which has the power to levy taxes and spend funds, as well as general corporate and police powers." *Id.* § 2101(a)(7).

Previously, Mr. Gautier asserted that the Defendants should be required to pay the statutory civil penalty to the City of Keystone. However, based on the map provided, the Court was unable to determine if the Burke Mountain Mine Complex was located in the City of Keystone. Thus, the Court ordered Mr. Gautier to remove that portion of the civil penalty under 29 U.S.C. § 2104(a)(3) from the damages' calculations. [ECF 157]. Now, Mr. Gautier asserts that same map [ECF 132-1] provides that the Burke Mountain Mine Complex, specifically the Burke Mountain Surface Mine, is located within the boundaries of McDowell and Wyoming County.

As stated above, a motion to amend judgment pursuant to *Rule* 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Melendez v. Sebelius*, 611 Fed.Appx. 762, 764 (4th Cir. 2015) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)). Here, Mr. Gautier is attempting to relitigate the civil penalty issue and present evidence as to the impacts on McDowell and Wyoming County that could have been raised prior to the entry of judgment. Accordingly, the Court **DENIES** Mr. Gautier's request to amend the judgment to include a civil penalty.

### 3. Description of Class

Pursuant to *Rule* 23(c)(3)(B), the judgment for a class certified under *Rule* 23(b)(3), must "include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who

have not requested exclusion, and whom the court finds to be class members." In his Motion to Certify Class, Mr. Gautier provided the following definition: "All employees of Bluestone Industries, Inc. ("Bluestone") who were terminated from employment, or subject to a reduction in force, at the Burke Mountain Mine Complex during the period beginning on October 14, 2019[,] and ending on January 11, 2020." [ECF 45 at 1]. On September 27, 2021, the Court granted Mr. Gautier's Motion to Certify Class and Certified the class as moulded pursuant to *Rule* 23(b)(3) [ECF 59].

Accordingly, to comply with *Rule* 23(c)(3)(B), the Court **AMENDS** the judgment to include the following language: "This judgment applies to the 164 miners to whom Rule 23(c)(2) notice was directed, none of whom has requested exclusion, and whom the Court finds to be members of the certified class in this matter." [ECF 162 at 11].

### 4. Proposed Notice of Class Judgment

As to the Proposed Notice of Class Judgment [ECF 162-7], the Court does not approve such notice, and **DIRECTS** Mr. Gautier to file an Amended Proposed Notice of Class Judgment in accordance with this Memorandum Opinion and Order, on or before April 15, 2024.

**D.      *Motion for Leave to File Proposed Order Approving Attorney Fees, Expenses, and Proposed Class Notice; and to File Proposed Amended Judgment***

Inasmuch as this Memorandum Opinion and Order adjudicates the pending motions, the Court **DENIES AS MOOT** Mr. Gautier's Motion for Leave to File Proposed Order Approving Attorney Fees, Expenses, and Proposed Class Notice; and to File Proposed Amended Judgment [ECF 172].

## IV.

Accordingly, the Court **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial [**ECF 164**], **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Alter or Amend Judgment Order [**ECF 165**], and Mr. Gautier's Motion to Amend Judgment Order and For Attorney Fees and Expense and Proposed Class Notice [**ECF 162**], **DENIES AS MOOT** Mr. Gautier's Motion for Leave to File Proposed Order Approving Attorney Fees, Expenses, and Proposed Class Notice; and to File Proposed Amended Judgment [**ECF 172**], and **GRANTS** Mr. Gautier's Motion to File Retainer Agreement Under Seal [**ECF 174**].

The Court **AMENDS** the judgement to include the following language "This judgment applies to the 164 miners to whom Rule 23(c)(2) notice was directed, none of whom has requested exclusion, and whom the Court finds to be members of the certified class in this matter." And to reflect a total award of $1,738,743.70, a statutory fee award of $110,992.50 and $45,593.64 in expenses, and $15,000 to Jules Gautier as a class representative service fee. The remaining contingent fee agreement is awarded in accord with the existing agreement.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        March 31, 2024

Frank W. Volk
United States District Judge